FILED
2024 May-21  AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDDIE LEE WEBB, SR, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:22-cv-00196-MHH** |
| **STEELSUMMIT HOLDINGS INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Following Eddie Webb's death, the administrators of his estate sued defendant SteelSummit Holdings, Inc. d/b/a Magic Steel to recover compensatory and punitive damages under Alabama state law.  (Doc. 1).  In turn, Magic Steel filed a third-party complaint against P&S Transportation, LLC; Alabama Metal Industries Corporation; and Ryder Integrated Logistics, Inc.  (Doc. 25).  Magic Steel later amended its third-party complaint.  (Doc. 38).  Magic Steel asserts state-law negligence and breach of contract claims against the third-party defendants and seeks two types of relief:  indemnity for defense costs and for any judgment against the company in favor of the administrators of Mr. Webb's estate and compensation for profits Magic Steel alleges it lost because of Mr. Webb's accident.  (Doc. 38).[1]

---

[1] The Court may exercise jurisdiction over the main claim between Mr. Webb's estate and Magic Steel pursuant to 28 U.S.C. § 1332, and the Court may exercise jurisdiction over Magic Steel's third-party claims against AMICO, Ryder, and P&S pursuant to 28 U.S.C. § 1367.  Before Magic

Ryder has asked the Court to dismiss Magic Steel's third-party claims against the company pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ryder, a transportation broker, contends that the Federal Aviation Administration Authorization Act – the FAAAA – preempts Magic Steel's state law claims such that those claims do not constitute "claim[s] upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

---

Steel filed its third-party compliant, it removed this action from state court to federal court based on diversity jurisdiction. Magic Steel alleged that Mr. Webb and Magic Steel are citizens of different states, (Doc. 1, p. 4); the administrators have not challenged the allegation. Like Mr. Webb (whose citizenship is the relevant consideration for purposes of diversity jurisdiction), third-party defendants AMICO and P&S are citizens of Alabama, (Doc. 38, p. 2), but the lack of diversity between the third-party defendants' citizenship and Mr. Webb's citizenship does not destroy diversity jurisdiction in this action. The Court may exercise ancillary jurisdiction over Magic Steel's state-law claims against the third-party defendants without regard to the citizenship of those defendants. *See Rogers v. Aetna Cas. & Sur. Co.*, 601 F.2d 840, 843 n.4 (5th Cir. 1979) ("Jurisdiction of the claims asserted by Aetna against the third-party defendants… exists by virtue of the doctrine of ancillary jurisdiction. In substance, that doctrine recognizes the power of a federal court, once proper subject matter jurisdiction of the main claim has been established, to adjudicate as incident thereto a related claim based wholly upon state law asserted by the defendant against a non-diverse impleaded third-party defendant.") (citation omitted); *see also Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1253 (11th Cir. 1988) ("Once a court has jurisdiction over a main claim, it also has jurisdiction over any claim ancillary to the main claim, regardless of the amount in controversy, citizenship of the parties or existence of a federal question in the ancillary claim.") (citations omitted). "[A]ncillary jurisdiction may only operate when there is a tight nexus with a subject matter properly in federal court." *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1119 (11th Cir. 1983) (internal marks and citations omitted). "This nexus or logical relationship between the main federal claim and the incidental state claim arises (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant." *Eagerton*, 698 F.2d at 1119 (citing *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 715 (5th Cir.1970)). Here, because the facts relating to the administrators' wrongful death claim against Magic Steel also are the basis for Magic Steel's claim for indemnity and for lost profits, the Court may exercise ancillary jurisdiction over Magic Steel's third-party claims.

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court must accept as true the factual allegations in the complaint and construe the factual allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). Therefore, in evaluating Ryder's motion to dismiss, the Court views the factual allegations in the amended third-party complaint and the inferences from those allegations in the light most favorable to Magic Steel. After describing those allegations, the Court examines the law regarding FAAAA preemption and considers Ryder's argument for dismissal.

## I.

According to Magic Steel, AMICO ordered 400,000 pounds of custom steel coils from Magic Steel. (Doc. 38, pp. 2–3, ¶¶ 6, 8). AMICO hired Ryder, a transportation broker, to arrange the delivery of the coils from Magic Steel to AMICO's facilities. (Doc. 38, p. 3, ¶ 9). Ryder selected P&S, a motor carrier, to transport the steel coils. (Doc. 38, p. 3, ¶ 10). P&S tapped Eddie Webb, one of its drivers, to pick up the coils from Magic Steel and deliver them to AMICO using a flatbed trailer. (Doc. 38, p. 4, ¶¶ 15, 16). After Magic Steel placed the coils onto Mr. Webb's flatbed truck, Mr. Webb was responsible for securing the coils in his truck, using the rubber matting and chains "P&S and/or Ryder provided." (Doc. 38, pp. 4–5, ¶¶ 16–18). Magic Steel alleges that Mr. Webb secured the load improperly,

and because the load was imbalanced, the coils rolled off the trailer and struck Mr. Webb, causing catastrophic injuries from which he later died. (Doc. 38, pp. 5–6, ¶¶ 22, 23, 25).

Before he died, Mr. Webb sued Magic Steel for compensatory and punitive damages for his personal injuries. Mr. Webb alleged that Magic Steel breached several duties the company purportedly owed to him, including the duty to properly load the steel coils on his truck and secure the load, and he alleged that Magic Steel negligently and wantonly breached these duties. Mr. Webb's spouse, Roberta Webb, asserted a loss of consortium claim against Magic Steel. (Doc. 1-1, pp. 7–19). After Mr. Webb died, Ms. Webb and Burton Dunn became co-administrators of Mr. Webb's estate. The administrators amended the complaint to add to the pre-death claims for compensatory and punitive damages a wrongful death claim for punitive damages under Alabama law based on the same alleged breaches of duty. (Doc. 14).

Magic Steel then sued AMICO, P&S, and Ryder. (Docs. 25, 38). Magic Steel contends that Ryder breached its duty to Magic Steel to provide proper equipment to load Mr. Webb's truck. Magic Steel also contends that Ryder breached its duty to ensure that Mr. Webb was adequately trained to properly secure and transport steel coils on his truck. (Doc. 38, p. 11). Through its negligence claims against Ryder, Magic Steel seeks indemnity for its defense costs and for any judgment the administrators of Mr. Webb's estate obtain against the company. Magic Steel also

seeks damages to compensate the company for profits lost because of damage to the steel coils. (Doc. 38).

## III.

Ryder's preemption defense to Magic City's negligence claims is rooted in the Supremacy Clause of the United States Constitution. "The Supremacy Clause of the United States Constitution preempts—that is, invalidates —state laws that 'interfere with, or are contrary to' federal law." *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266 (11th Cir. 2023) (citation omitted). Through the Federal Aviation Administration Authorization Act, Congress has expressly preempted certain state laws that affect the transportation industry. *Aspen.*, 65 F.4th at 1266.

A bit of historical background helps explain the FAAAA's application to the interstate trucking industry. In 1978, to promote competition in the airline industry, Congress enacted the Airline Deregulation Act. *Rowe v. New Hampshire Motor Trans. Ass'n*, 552 U.S. 364, 367-68 (2008). Two years later, Congress took steps to deregulate trucking by adopting the Motor Carrier Act. In 1994, in the Federal Aviation Administration Authorization Act, Congress preempted state laws that could undo federal deregulation of the airlines and trucking industries. *Rowe*, 552 U.S. at 368. "Congress' overarching goal" in enacting the FAAAA was to "help[] ensure transportation rates, routes, and services that reflect "maximum reliance on

competitive market forces," thereby stimulating "efficiency, innovation, and low prices," as well as "variety" and "quality.'" *Rowe*, 552 U.S. at 371 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S.374, 378 (1992)).  Under the FAAAA, a state may not "enact or enforce a law, regulation, or other provision… related to a price, route, or service of any motor carrier… or any… broker… with respect to the transportation of property." 49 U.S.C.A. § 14501(c)(1).  The FAAAA preempts "state regulation of the essential details of a motor carrier's system for picking up, sorting, and carrying goods—essential details of the carriage itself." *Rowe*, 552 U.S. at 373.  The FAAAA's preemptive power is broad and extends to state common-law rules. *Aspen*, 65 F.4th at 1266 (citing *Northwest, Inc. v. Ginsberg*. 572 U.S. 273, 281-84 (2014)).  Magic Steel's negligence claims against Ryder concern the service of a broker with respect to the transportation of property.

Under FAAAA, "a 'broker' is one who 'sells, offers for sale, negotiates for, or holds itself out… as selling, providing, or arranging for, transportation by motor carrier for compensation.'" *Aspen*, 65 F.4th at 1267 (quoting 49 U.S.C. § 13102(2) (italics omitted)).  A broker "arrang[es] for the transportation of property by a motor carrier," and "[a] 'core' part of this transportation-preparation service is… selecting the motor carrier who will do the transporting." *Aspen*, 65 F.4th at 1267 (citation omitted).  Under the FAAAA, a motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).  Ordinarily, the FAAAA

preempts state-law negligence claims "against a transportation broker for its selection of a motor carrier to transport property in interstate commerce" because such a claim regulates a broker "in the performance of [its] core transportation-related services." *Aspen*, 65 F.4th at 1268.

Here as in *Aspen*, Magic Steel's allegations against Ryder "are comparable to those underlying claims like negligent hiring, negligent selection, and negligent entrustment of a dangerous instrumentality, each of which is premised on public safety concerns under [Alabama] law." *Aspen*, 65 F.4th at 1269. Magic Steel alleges that in selecting P&S, a motor carrier, to transport steel coils for AMICO, Ryder breached its duty to ensure that P&S provided Mr. Webb with the equipment and training necessary to "secure and haul steel coils from Magic Steel's facility to AMICO." (Doc. 38, pp. 4, 8–10, ¶¶ 11–13, 35, 37, 41, 44, 45). Per *Aspen*, unless an exception applies, the FAAAA preempts Magic Steel's negligence claims against Ryder because those claims implicate Ryder's "core transportation-related services." *Aspen*, 65 F.4th at 1268.

One such exception is the FAAAA's safety exception which provides, as relevant here, that FAAAA preemption "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). In *Aspen*, the Eleventh Circuit explained that for a negligence claim to fall within the safety exception, "(1) the negligence standard must constitute an exercise of [the

state's] 'safety regulatory authority,' and (2) that authority must have been exercised 'with respect to motor vehicles.'" *Aspen*, 65 F.4th at 1268 (quoting 49 U.S.C. § 14501(c)(2)(A)). "[A] law is within 'the safety regulatory authority of a State' only if the law is 'genuinely responsive to safety concerns.'" *Aspen*, 65 F.4th at 1268 (quoting *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442 (2002)). The two-part standard asks "whether [a state's] common law negligence standard, which allows claims against a broker based on [the negligence claim(s) at issue], is 'genuinely responsive to safety concerns' and thus within [the state's] 'safety regulatory authority.'" *Aspen*, 65 F.4th at 1270. "[T]he exception's 'clear purpose' is to ensure that the preemption provision does not encroach upon 'the preexisting and traditional state police power over safety.'" *Aspen*, 65 F.4th at 1269 (quoting *Ours Garage*, 536 U.S. at 439).

Here, the Court does not need to speculate about the relationship between Magic Steel's claims concerning the equipment and training provided to Mr. Webb for the safe loading of steel coils onto a flatbed trailer and Alabama's police power over safety. Section 32-9A-2 of the Alabama Code expressly addresses the commercial transportation of metal coils. As relevant here, the statute provides:

> (2)a. No person may operate a commercial motor vehicle in this state in violation of 49 C.F.R. § 393.120, as amended, relating to load securement for certain metal coils.
>
> b. No one owning, leasing, or allowing a commercial vehicle to be operated in this state shall knowingly or negligently be in violation

of 49 C.F.R. § 393.120, as amended, relating to load securement for metal coils.

(3) No person may knowingly or negligently own or lease or cause to be operated on any public highway, road, street, or other public right-of-way a commercial motor vehicle loaded with a metal coils in a manner that fails to comply with 49 C.F.R. § 393.120 and thereby allows a metal coil to drop, fall, spill, shift, or otherwise escape from the commercial vehicle onto any public highway, road, street, or any other public right-of-way.

(4)a. No motor carrier may initiate or terminate in this state the commercial transport of metal coils, as defined in 49 C.F.R. § 393.120, unless the commercial vehicle operator is certified in proper load securement as provided in 49 C.F.R. § 393.120. Certification shall be conducted according to standards published by the Department of Public Safety and certified by the motor carrier and the driver on forms provided by the department.

b. The operator of a commercial motor vehicle involved in the commercial transport of metal coils subject to this subdivision shall be certified in proper load securement as provided in 49 C.F.R. § 393.120.

Ala. Code § 32-9A-2(a)(2)-(4)(1975).  The Title of § 32-9A-2 is "Compliance with

Federal Motor Carrier Safety Regulations . . ."[2]

In *Lands v. Ward,* the Alabama Supreme Court applied federal regulations

concerning motor carriers to inform its analysis of the plaintiff's negligence claim

---

[2] As a general matter, the Alabama Legislature regulates the safe transportation of loads by motor vehicle, private or commercial.  Ala. Code § 32-5-211 (1975) (proving that "[w]henever the load of any vehicle shall extend more than four feet beyond the rear of the bed or body of the vehicle, there shall be displayed at the end of the load in a position which shall be clearly visible at all times from the rear of the load a red or orange flag not less than 12 inches both in length and width. Between one-half hour after sunset and one-half hour before sunrise there shall be displayed at the end of any load a red light or amber strobe light plainly visible under normal atmospheric conditions at least 200 feet from the rear of the vehicle. Any person violating this section shall be guilty of a misdemeanor and upon conviction shall be punished as provided in Section 32-5-311.").

arising out of injuries he sustained while starting a truck he was using to haul timber. 349 So. 2d 219 (Ala. 2021).  In seeking reversal of a summary judgment in favor of the defendant, the plaintiff argued that "regulations promulgated by the Federal Motor Carrier Safety Administration ('FMCSA') and incorporated into the Alabama Code by reference, see § 32-9A-2(a)(1), Ala. Code 1975, imposed a duty on Lucky B to inspect the truck and maintain it in a safe condition."  The Alabama Supreme Court agreed.  The Alabama Supreme Court explained:

> In a negligence action, it is possible for a legal duty imposed by statute or regulation to inform the common-law standard of reasonable care or to supplant it entirely. *See Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 930-931 (Ala. 2005). "A violation of [a safety] statute or ordinance can, therefore, be evidence of negligence under certain circumstances." *Murray v. Alabama Power Co.*, 413 So. 2d 1109, 1114 (Ala. 1982). "The decision of whether a violation occurred, whether such violation was negligence, and whether such negligence was the proximate cause of the injuries complained of will ... be left ... to the jury." *Id.*1

> Here, Lands argues that Lucky B's duties were informed by FMCSA regulations.  Specifically, he cites 49 C.F.R. § 396.3(a), which provides: "Every motor carrier ... must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired or maintained, all motor vehicles ... subject to its control." As used in 49 C.F.R. § 396.3(a), a "motor carrier" includes the term "employer" as that term is defined elsewhere in the FMCSA regulations. 49 C.F.R. § 390.5. And "employer" means "any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business." Id. These regulations have been expressly incorporated into Alabama law by statute. § 32-9A-2(a)(1), Ala Code 1975 (providing that, subject to exceptions not applicable here, "no person may operate a commercial motor vehicle in this state, or fail to maintain required records or reports, in violation of the federal motor carrier safety

regulations as prescribed by the U.S. Department of Transportation, 49 C.F.R.... Parts 390-399 and as they may be amended in the future"). Further, the FMCSA has promulgated an additional regulation declaring that "[a] motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle." 49 C.F.R. § 369.7(a).

We have held that the purpose of regulations like these is to eliminate the "'problem of a transfer of operating authority, with its attendant difficulties of enforcing safety requirements and fixing financial responsibility for damage and injuries to shippers and members of the public.'" *Phillips v. J.H. Transp., Inc.*, 565 So. 2d 66, 70 (Ala. 1990) (quoting *Transamerican Freight Lines v. Brada Miller Freight Sys.*, 423 U.S. 28, 37, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975)). Simply put, the regulations are designed to prevent motor carriers from shirking responsibility if someone gets hurt in an accident involving a commercial motor vehicle.

*Lands*, 349 So. 2d at 223–224.  The Alabama Supreme Court agreed with the plaintiff's argument that the defendant had a common law duty to inspect and maintain his vehicle in a safe condition.  *Lands*, 349 So. 2d at 225–26.  The Court stated that the common law duty "bolster[ed] what the regulations and statute already established."  *Lands*, 349 So. 2d at 226.  The Alabama Supreme Court reversed the summary judgment in favor of the defendant on the plaintiff's negligence claim.

The parties did not discuss Alabama Code § 32-9A-2(a)(2)-(4), *Lands*, or Alabama case law regarding negligence claims concerning the safe loading of commercial trucks.  Before deciding whether the safety exception prevents the FAAAA from preempting Magic Steel's negligence claims against Ryder, the Court will give the parties an opportunity to brief this law.

**IV.**

Consistent with the discussion above, no later than May 29, 2024, Ryder may submit a brief concerning the impact of Alabama's statutory law regarding metal coils and Alabama common law regarding safety regulations on Magic Steel's argument for a safety exception to the FAAAA preemption.  No later than June 12, 2024, Magic Steel may file a reply brief concerning these issues.

**DONE** and **ORDERED** this May 21, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE